United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALIITASI T ALAPATI,

    Plaintiff,

v.

CITY AND COUNTY OF SAN
FRANCISCO, et al.,

    Defendants.

Case No. 21-cv-04144-SI

**ORDER ON PLAINTIFF'S REQUEST
TO FIND CCSF LACKS AUTHORITY
TO COLLECT RESTITUTION FROM
PLAINTIFF'S SETTLEMENT FUNDS**

Re: Dkt. No. 62

Plaintiff Aliitasi Alapati filed a voluntarily dismissal of this lawsuit on July 30, 2022 after reaching a settlement agreement with defendants. Dkt. No. 66. The Court entered a dismissal order incorporating the terms of the settlement agreement. Dkt. No. 69. Now before the Court is an ongoing dispute over whether the settlement agreement authorizes the City and County of San Francisco ("CCSF") to pay the settlement funds directly to the San Francisco Superior Court in partial satisfaction of a restitution obligation owed by Alapati rather than sending the funds to Alapati herself (who remains personally liable for restitution).

The Court finds the settlement agreement does not authorize CCSF to send settlement funds to anyone other than Alapati. If CCSF wishes to avail itself of California Penal Code section 2085.7 to ensure restitution is paid, it may do so in accordance with the procedures set forth in the statute; as written, section 2085.7 does not plainly authorize CCSF to send settlement funds to the San Francisco Superior Court. Because the settlement agreement does not contemplate that anyone other than Alapati receive the settlement funds, the Court **ORDERS** the settlement funds be paid directly to Alapati (via her counsel, Legal Allies).

United States District Court
Northern District of California

**BACKGROUND**

On September 3, 2020, Aliitasi Alapati entered a guilty plea for a felony before the San Francisco Superior Court. Dkt. No. 63-4. On October 8, 2020, the Superior Court sentenced Alapati to two years, crediting her for the 790 days she had already spent in jail. *Id*. Alapati was ordered to pay $285,058 in restitution to the victim, Sandy Hu. *Id*.; Dkt. No. 63-5 at 2. To the Court's knowledge, Alapati's restitution obligation remains outstanding.

While she was incarcerated, Alapati sued the CCSF and various jail nurses and staff for injuries sustained while in custody. Dkt. No. 1 (filed in state court on March 11, 2020, removed on Feb. 1, 2022). On May 4, 2022, the parties drafted a conditional settlement agreement of Alapati's claims. The agreement, fully executed the following day, states that CCSF will pay $100,000 for emotional distress in exchange for a full release of Alapati's claims. Dkt. No. 63-2. But after executing the agreement, the San Francisco City Attorney informed Alapati of CCSF's intention to pay the entire $100,000 settlement, less attorney's fees, to the San Francisco Superior Court in partial satisfaction of the $285,058 restitution order, rather than sending the funds to Alapati, who remains obligated to pay restitution. Dkt. No. 62-1. At issue now is whether, under California law and the terms of the settlement agreement, CCSF may direct the settlement funds to the Superior Court instead of Alapati.

**JURSDICITON**

Federal courts do not enjoy any inherent jurisdiction to enforce a settlement agreement "simply because the subject of that settlement was a federal lawsuit." *O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir.1995). "Enforcement of [a] settlement agreement ... whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 378 (1994). A federal court may exercise its "ancillary jurisdiction" to enforce a settlement agreement, but such jurisdictional footing only exists "if the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the

2

settlement agreement) or by incorporating the terms of the settlement agreement in the order.'" *Id.*

at 381. "In that event, a breach of the agreement would be a violation of the order, and ancillary

jurisdiction to enforce the agreement would therefore exist." *Id.*

The Court entered a dismissal order incorporating the terms of the settlement agreement. Dkt

No. 69. CCSF's anticipatory breach of the settlement agreement would thus be a violation of the

Court's order, vesting this Court with ancillary jurisdiction to enforce the settlement.

## DISCUSSION

### A. Terms of the Settlement

The conditional settlement agreement, signed by plaintiff's counsel on May 4, 2022 and

defendants' counsel on May 5, 2022, states in full:

> This confirms the conditional settlement reached at court-ordered mediation held on May 4,
> 2022 with Hon. Maria-Elena James (ret.) of ADR Services, Inc. in the above-captioned case.
> Subject to all necessary approvals, including but not limited to approvals by the San
> Francisco Department of Public Health, San Francisco Health Commission, and the San
> Francisco Board of Supervisors, **and subject to California Penal Code Sections 1202.4(i),**
> **2085.7**, the City will pay One Hundred Thousand Dollars ($100,000), characterized as
> compensatory damages for emotional distress, in full settlement of all claims, known and
> unknown, in connection with the events and allegations of case United States District Court,
> Northern District of California, case No. 21-CV-04144-SI; each side to bear its own costs
> and attorney's fees; Plaintiff to satisfy all liens; and Plaintiff to execute a general release.

Dkt. No. 63-2. The agreement expressly conditions payment on California Penal Code section

2085.7. Only after the settlement agreement was executed did defense counsel inform Alapati that

CCSF would rely on section 2085.8—not mentioned in the agreement—to issue payment directly

to the Superior Court, rather than to Alapati. Dkt. No. 62-1 ¶ 5, 6 (plaintiff counsel declaration).

Alapati asks this Court to enforce the settlement agreement by directing payment of the

$100,000 directly to her (via her attorneys, Legal Allies P.C. Trust Account). Dkt. No. 62 at 10.

CCSF argues it is allowed to pay the settlement funds directly to the San Francisco Superior Court

because the "agreement clearly conveys that any release of funds is subject to [Alapati's] obligation

to pay restitution." Dkt. No. 63 at 5. Although CCSF is correct that Alapati has a continuing

obligation to pay restitution, it is incorrect that the settlement agreement authorizes it to act as a

3

United States District Court
Northern District of California

1    collector of that debt.

2

3    **B. Applicable State Law**

4        Under California law, a "restitution order…shall be enforceable as if the order were a civil

5    judgment." Cal. Penal Code § 1202.4. Two sections in the California Penal Code may be relevant

6    for deciding whether CCSF may direct payment of the settlement funds directly to the San Francisco

7    Superior Court in partial satisfaction of the restitution order.

8        The first is section 2085.7(b), which describes the authority of county agencies to collect

9    unpaid restitution from persons no longer subject to the state court's criminal jurisdiction. It

10    provides: "[w]hen a prisoner who owes payment for a restitution order, or any portion thereof, is

11    released from the custody of a county jail facility after completion of a term [of mandatory

12    supervision under section 1170(h)(5)(A)], the prisoner has a continuing obligation to pay the

13    restitution order in full." The code section then sets forth specific procedures for collection:

14
> The balance of the restitution order remaining unpaid … is enforceable and may be collected,
> in a manner to be established by the county board of supervisors, by the agency designated
15
> by the county board of supervisors in the county in which the prisoner is released. If the
> county elects to collect the restitution order, the agency designated by the county board of
16
> supervisors for collection shall transfer the collected amount to the California Victim
> Compensation Board for deposit in the Restitution Fund or may pay the victim directly.
17

18    Cal. Penal Code Section 2085.7(b). This is the code section cited in the settlement agreement itself.

19    To date, CCSF has not offered any evidence suggesting its proposed method of collecting restitution

20    (i.e., cutting a check to the San Francisco Superior Court) is a "manner" that has been "established

21    by the county board of supervisors," or that it itself is the "agency designated by the county board

22    of supervisors" to enforce and collect the restitution. While nothing in this order should be read to

23    preclude the county board of supervisors from designating a collection agency and setting forth a

24    manner of collection that is consistent with CCSF's proposed approach in the present case, the Court

25    is unable to find that the county board of supervisors has actually done so. Section 2085.7(b) does

26    not otherwise authorize CCSF to collect restitution in any manner it sees fit.

27        Perhaps recognizing the flaw in relying on section 2085.7, CCSF now purports to rely on

28    section 2085.8(a) of the California Penal Code, which provides: "[c]ompensatory or punitive

4

damages awarded by trial or settlement to any inmate, parolee, person placed on post release community supervision pursuant to Section 3451, or defendant on mandatory supervision imposed pursuant to [section 1170(h)(5)(A)] in connection with a civil action brought against a federal, state, or local jail, prison, or correctional facility, or any official or agent thereof, shall be paid directly, after payment of reasonable attorney's fees and litigation costs approved by the court, to satisfy any outstanding restitution orders or restitution fines against that person." CCSF's reliance on section 2085.7 also suffers a fundamental defect: Alapati is not an "inmate, parolee, person placed on post release community supervision pursuant to Section 3451, or defendant on mandatory supervision imposed pursuant to [section 1170(h)(5)(A)]." Alapati was released from the state court's criminal jurisdiction after sentencing on October 8, 2020.

Accordingly, payment should be made directly to Alapati (via her counsel) under the terms of the settlement agreement. Alapati concedes that her restitution obligations are ongoing, and state law will provide adequate remedies for the victim to be made whole even if the settlement funds end up in Alapati's bank account in the first instance. See, e.g., Cal. Penal Code §§ 1214(b), 2085.8(a), 2085.7(b).

**IT IS SO ORDERED**.

Dated: August 17, 2022

_____
SUSAN ILLSTON
United States District Judge